J. L. LAWSHE v. NORFOLK SOUTHERN RAILROAD COMPANY.

(Filed 24 March, 1926.)

**1. Evidence—Nonsuit.**

Upon a motion as of nonsuit, the evidence to support plaintiff's cause of action is to be taken as true, giving him the benefit of every reasonable intendment to be deducible therefrom.

**2. Bills of Lading—Possession—Transfer of Goods by Delivery—Intent— Contracts.**

A bill of lading is a symbol of the goods therein specified, and may, unendorsed, be transferred by delivery of the possession with the intent to pass title to the shipment.  C. S., 311.

**3. Actions—Parties—Carriers—Railroads—Consignor and Consignee— Real Party at Interest—Evidence—Questions for Jury.**

Where the plaintiff in an action to recover for a damaged shipment from a carrier, produces the bill of lading, unendorsed, upon the trial, and the evidence tends to show that the plaintiff had sold the shipment to another whose name therein appears as consignee, it is sufficient of the intent of the consignee to transfer the title by delivery of the bill of lading, and to sustain the plaintiff's right to maintain his action as the real party in interest.  C. S., 446.

**4. Carriers—Railroads—Warehousemen—Ordinary Care—Negligence.**

Where damages have accrued to a shipment of goods while in the carrier's possession, after arrival at destination, the carrier's liability is that of a bailee or warehouseman, requiring the exercise of ordinary care.

CIVIL ACTION, before *Cranmer, J.,* at October Term, 1925, of WILSON.

This action was originally instituted by W. H. Farmer and J. L. Lawshe v. Norfolk Southern Railroad Company to recover damages occasioned by the negligent conduct of the defendant in exposing certain flooring to the weather.  The flooring was ordered from Louisville, Kentucky, by the plaintiff, Lawshe, and shipment was made over the Southern Railway Company and connecting carriers, and in due course was delivered to the defendant, Norfolk Southern Railroad Company. The defendant transported the property to Bailey, North Carolina, and it arrived there in good condition.  The plaintiff alleged that thereafter the defendant put the flooring on a platform at its freight station instead of in the station, and that thereby it was exposed to rains and heavy dews for several days, which resulted in rendering the material absolutely worthless.  At the trial of the cause W. H. Farmer, who was named as coplaintiff in the action, came into court requesting that his name be stricken from the pleadings for the reason that he had never authorized suit to be brought in his name and had never made any demand upon the defendant for damages, and had never assigned any

right of action in the cause to the plaintiff. Farmer's action was allowed and upon motion by the plaintiff, J. L. Lawshe, Farmer was made a party defendant, and an order made by the judge that summons issue to that end.

The plaintiff testified that he lived in Wilson and that he had a contract with W. H. Farmer, who lived at Bailey, to put flooring in Farmer's house; that he ordered the flooring from Louisville, Kentucky, and paid for the same; that invoice was sent from the vendor in Louisville to him. Plaintiff further testified that he sold flooring to Mr. Farmer for seven rooms; that the flooring was to be shipped from the company in Louisville to Mr. Farmer, and that the flooring still belonged to him. The flooring was shipped to Mr. Farmer, who lived at Bailey, where the work was to be done, in accordance with instructions given the vendor by the plaintiff, Lawshe. Thereupon the plaintiff, Lawshe, introduced in evidence a straight bill of lading duly issued by the Southern Railway at Louisville, Kentucky, in which bill of lading the crates of flooring were consigned to W. H. Farmer at Bailey, N. C. There was further testimony that the shipment arrived at Bailey on 1 October, and the plaintiff, Lawshe, received notice from Farmer on 7 October, advising him that the lumber had arrived but that he could not pay for it as he would have to use cheaper lumber. The evidence tended to show that the words "keep dry" were stenciled on each crate of lumber, and notwithstanding this notice the lumber was left on the platform of defendant, out of the house, under the drip of the warehouse at a season when dews were heavy, and that the lumber was wet. There was also evidence that the agent of the defendant informed the plaintiff, Lawshe, that the reason the lumber was put out under the eaves was that the warehouse was full of tobacco. The weather was foggy at times in October, 1920, and water dripped from the eaves of the house on the lumber.

At the close of plaintiff's evidence the court declined to submit the case to the jury and dismissed it as of nonsuit. The plaintiff appealed from said judgment.

W. A. Lucas for plaintiff.
W. A. Finch and R. L. Brinkley for defendant.

BROGDEN, J. The judgment of nonsuit presents the question: Can the holder of an unendorsed bill of lading maintain an action against a carrier either as carrier or warehouseman for damages to the property while in its possession?

It is an elementary rule that upon a motion for nonsuit the evidence in support of plaintiff's cause of action must: (1) be taken as true; (2) be construed in the light most favorable to plaintiff; (3) give

plaintiff the benefit of every reasonable inference to be deducted from the evidence offered. *Whittington v. Iron Co.,* 179 N. C., 653; *Farming Co. v. R. R.,* 189 N. C., 66. It is also provided by C. S., 446, that every action must be prosecuted in the name of the real party in interest.

The bill of lading is the symbol of the goods specified therein. The plaintiff was in possession of the bill of lading unendorsed. It is admitted that the plaintiff ordered the goods, gave the shipping instructions to the vendor, and that he paid for the goods. He further testified that the goods still belonged to him. Certainly, if Farmer delivered the bill of lading to the plaintiff with the intention of passing title to the property described therein, this would be a sufficient vesting of title to enable plaintiff to maintain the suit. *Horton v. R. R.,* 170 N. C., 384.

The preliminary inquiry, therefore, would be whether or not the plaintiff was the real owner of the property or whether the consignee, Farmer, was the real owner thereof. There was testimony that the plaintiff had sold to Farmer flooring for seven rooms, which was to be shipped from the Wood Mosaic Company of Louisville, Kentucky, to Farmer. There was further testimony that the flooring still belonged to the plaintiff and that it was shipped to Mr. Farmer at Bailey because that was the place where the work was to be done. Upon this testimony the defendant contended that the plaintiff was not the owner of the flooring. The plaintiff contended to the contrary.

It must be conceded that if the plaintiff was not the owner of the property, he could enforce no liability against the defendant either as carrier or warehouseman. The question of ownership of the property, therefore, was directly involved, and this was a question for the jury.

C. S., 311, provides as follows: "A bill may be transferred by the holder by delivery, accompanied with an agreement, expressed or implied, to transfer the title to the bill or to the goods represented thereby." The obvious meaning of the statute is that a valid transfer of a bill of lading is effected by the holder when he delivers it to a third party with the intention of transferring the title to the property represented thereby. As the bill of lading is in itself the legal symbol of the property, the transfer of such symbol would be some evidence of an intention to transfer the title. It appears from the evidence that not only was the bill of lading delivered to the plaintiff, but in addition, Farmer, upon arrival of the property, wrote a letter to the plaintiff informing him of the arrival of the lumber, and that he could not pay for it, as he would have to use cheaper lumber. This evidence, with the inferences reasonably deducible therefrom, is sufficient to be submitted to a jury on the question as to whether or not the bill of lading was delivered to the plaintiff with an "agreement, express or implied, to transfer the title to the bill or to the goods represented thereby." It was

alleged in the complaint and admitted in the answer that the property arrived at Bailey in good condition. Therefore, the only liability incurred by the defendant was that of warehouseman.

The accepted rule prescribing and defining the liability of a carrier as a warehouseman is stated thus by *Walker, J.,* in *Hosiery Mills v. Hines,* 184 N. C., 359: "So long as a carrier has the custody of the goods, although there has been a constructive delivery which exempts it from liability as a carrier, there supervenes upon the original carriage contract, by implication of law, a duty, as bailee or warehouseman, to take ordinary care of the property." 4 R. C. L., 761, sections 228-229; *Turrentine v. R. R.,* 100 N. C., 375; *Young v. R. R.,* 116 N. C., 936; *Motley v. Warehouse Co.,* 122 N. C., 347; *Hanes v. Shapiro,* 168 N. C., 24; *Hemphill v. R. R.,* 170 N. C., 454.

We hold upon the record as presented that the cause should be submitted to a jury with proper instructions by the court.

Reversed.